**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KRISTA R.,**

                                        **Plaintiff,**

        **v.**                                                         **8:20-CV-1354 (TJM/DEP)**

**KILOLO KIJAKAZI, Acting Commissioner**
**of Social Security,**

                                        **Defendant**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION and ORDER**

**I.      INTRODUCTION**

        Plaintiff commenced this proceeding, pursuant to 42 U.S.C. § 405(g), to challenge a

determination of the Commissioner of Social Security ("Commissioner") finding that she

was not disabled between November 30, 2014, and June 1, 2016, and, accordingly, is

ineligible for the disability insurance benefits ("DIB") for which she has applied related to

that period of time. This matter was referred to the Hon. David E. Peebles, United States

Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and

Rule 72.3 of the Local Rules of the Northern District of New York.  In a Report and

Recommendation dated July 8, 2022, Judge Peebles recommends that the

Commissioner's decision be affirmed, defendant's motion for judgment on the pleadings

(Dkt. No. 20) be granted, plaintiff's motion for judgment on the pleadings (Dkt. No. 15) be

denied, and plaintiff's complaint be dismissed. _See_ R & R, Dkt. No. 32.  Plaintiff filed

1

objections to the recommendations, Dkt. No. 33, to which the Commissioner responds, Dkt. No. 34.

## II.    STANDARD OF REVIEW

"A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled." *Melinda V. v. Comm'r. of Soc. Sec.*, 5:21-CV-0743 (GTS), 2022 WL 4225224, at *4 (N.D.N.Y. Sept. 13, 2022)(citing 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990)).  Rather, "[d]istrict courts review a Commissioner's final decision pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3), and 'may only set aside a determination by the Commissioner if it is based on legal error or not supported by substantial evidence in the record.'" *Hill v. Comm'r of Soc. Sec.*, No. 1:19-CV-5096 (ALC), 2020 WL 5768726, at *5 (S.D.N.Y. Sept. 28, 2020)(quoting *Cole v. Colvin*, 12-cv-8597, 2014 WL 1224568, at "*2 (S.D.N.Y. Mar. 24, 2014)).  In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)(Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks omitted).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that

2

which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "However, the reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation." *Cruz o/b/o M.M.W. v. Comm'r. of Soc. Sec.*, 19-CV-9253 ATBCM, 2021 WL 4123969, at *13 (S.D.N.Y. Aug. 25, 2021), *report and recommendation adopted sub nom. Cruz v. Comm'r. of Soc. Sec.*, 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021). "[O]nce an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (quotation marks and citation omitted). As the Second Circuit has explained, that is a "very deferential standard of review – even more so than the 'clearly erroneous' standard." *Id.*

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.1997)(The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings.). "'A proper objection is one that identifies the specific portions of the [Report-Recommendation] that the objector asserts are erroneous and provides a basis for this assertion.'" *John L. M. v. Kijakazi*, 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *1 (N.D.N.Y. Aug. 18, 2022)(quoting *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted)). "Properly

3

raised objections must be 'specific and clearly aimed at particular findings' in the report." *Id*. (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).  "Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error." *Id*. (citing *Molefe*, 602 F. Supp. 2d at 487).  "To the extent a party makes 'merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments' set forth in the original submission, the Court will only review for clear error." *Id.* (quoting *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted)); *see Timothy B. v. Comm'r of Soc. Sec.*, No. 17-cv-0399, 2018 WL 3853999, at *1 (N.D.N.Y. Aug. 14, 2018) ("Where . . .  an objecting party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error.")(quotations and citations omitted), *aff'd sub nom. Barnaby v. Berryhill*, 773 F. App'x 642 (2d Cir. 2019). "Additionally, a district court will ordinarily refuse to consider an argument that could have been, but was not, presented to the magistrate judge in the first instance." *Timothy B.*, 2018 WL 3853999, at *1 (citations omitted).

After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

## III.   BACKGROUND

### a.  Factual

The Court presumes familiarity with the background facts of this case as set forth in

4

Judge Peebles's Report and Recommendation.  Suffice it to say, as indicated by  Judge

Peebles, plaintiff was born in April of 1979, and was thirty-five years old on November 30,

2014, the date upon which she allegedly became disabled. Plaintiff alleges that she

suffers primarily from residual cognitive effects of a traumatic brain injury ("TBI") she

suffered in a serious motor vehicle accident in November of 2014, cervical spine pain and

limitations, chronic pain, headaches, bipolar disorder, and depression. Plaintiff claims that,

since being in the 2014 car accident, she has experienced issues with her cervical spine,

nerve pain, and residual effects of her TBI she suffered as a result of her skull fracture.

She has difficulty turning her head, which limits her ability to drive, and suffers from

frequent migraines for which she receives Botox injections. Plaintiff also reports having a

poor memory and experiencing confusion related to her TBI. She additionally has been

diagnosed with bipolar disorder and has had significantly more depression because of her

inability to function at her previous level since her accident. Plaintiff also reports

experiencing side effects from her various medications.

> **b.  Procedural**

> ### 1.  Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security Act on August

12, 2015. In support of her application, she claimed to be disabled due to bipolar disorder,

major depression, a broken neck, a cracked skull, a TBI, and chronic pain.

A hearing was conducted on September 21, 2017, by Administrative Law Judge

("ALJ") Andrew J. Soltes, Jr., to address plaintiff's application. Following that hearing, ALJ

Soltes issued an unfavorable decision on December 4, 2017. The Social Security Appeals

Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision on November 2, 2018.

Plaintiff appealed that determination to this court. On June 27, 2019, United States Magistrate Judge Andrew T. Baxter remanded the case to the agency for further proceedings, upon consent of both parties. Pursuant to that remand order, the Appeals Council returned the case back to ALJ Soltes for further consideration of plaintiff's headaches, the opinion from Dr. Sprouse-Blum, and the other medical opinions, and to obtain additional evidence if necessary, such as from a medical expert. See T 899-900.[1]

_____

[1]The Appeals Council's remand order provides:

• Further consideration of the severity of the claimant's headaches, along with the treating source opinion from Adam Sprouse-Blum, M.D., is warranted. On February 16, 2017, Dr. Sprouse-Blum wrote that the claimant was experiencing 20 headache days per month and that it was too soon to determine whether treatment would be effective. (Exhibit 21 F). The Administrative Law Judge afforded this opinion little weight because it was not supported by treatment notes, and because Dr. Sprouse-Blum did not provide any detail or articulated basis for finding the claimant unable to work (page 10). However, Dr. Sprouse-Blum specifically explained that the claimant's headaches were of moderate to severe intensity and could last for more than a day, her headaches were accompanied by sensitivity to light, and she experienced nausea (Exhibit 21 F). In addition, the evidence in the subsequent allowance that the claimant's headaches increased after the fourth Botox treatment in October 2017, supported this opinion. Furthermore, the Administrative Law Judge did not evaluate the nature and severity of the claimant's headaches pursuant to Listing 11.02. Therefore, further evaluation is warranted.

Upon remand the Administrative Law Judge will:

• Further consider the severity of the claimant's headaches.

• Give further consideration to the treating source opinion from Dr. Sprouse-Blum, along with all other medical source opinions pursuant to the provisions of 20 CFR 404.1527, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating and non-treating sources to provide additional evidence and/or further clarification of the opinions (20 CFR 404.1520b).

• Further, if necessary and available, obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's headaches (20 CFR 404.1513a(b)(2)).

• Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 96-8p).

(continued...)

While plaintiff's appeal was pending, the agency found plaintiff disabled beginning on December 5, 2017, based upon a subsequently filed Title II application. ALJ Soltes held another hearing on July 9, 2020.  Following that hearing, on September 4, 2020, he issued a partially favorable decision, finding that plaintiff was disabled beginning June 1, 2016, which was the earliest date upon which plaintiff complained of frequent migraine headaches, but not at any time before that date.  Plaintiff then filed the instant proceeding in this court, challenging the Commissioner's partially unfavorable decision.

## 2.  The ALJ's Decision

As Judge Peebles indicates, in his most recent decision, ALJ Soltes applied the familiar, five-step sequential test for determining disability. At step one, he found that plaintiff had not engaged in substantial gainful activity during the relevant period. The ALJ next found at step two that plaintiff suffers from medically determinable impairments that impose more than minimal limitations on her ability to perform basic work functions, including status post motor vehicle accident with skull fracture, subdural hematoma, and a TBI; fractured vertebrae status post fusion; restless leg syndrome; asthma; an anxiety disorder; an affective disorder; and a cognitive disorder. The ALJ additionally found that plaintiff's migraines were a severe impairment beginning on June 1, 2016.

At step three, ALJ Soltes examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal

---

[1](...continued)
T. 899-900

any of the listed, presumptively disabling conditions set forth in the Commissioner's

regulations, specifically considering Listings 1.04, 3.03, 11.02, 11.18, 12.02, 12.04, and

12.06.

ALJ Soltes next surveyed the available record evidence and concluded that, prior to

June 1, 2016, plaintiff retained the residual functional capacity ("RFC") to perform a range

of work at the sedentary level with the following additional limitations:

> she could frequently finger and handle; could occasionally stoop, crouch,
> and climb stairs and ramps; could never kneel, crawl, work at unprotected
> heights, or climb ladders, ropes, or scaffolds; needed to avoid the use of
> heavy machinery as well as motor vehicles for work purposes; needed to
> avoid concentrated exposure to dust, fumes, gases, and other pulmonary
> irritants; needed to avoid extreme temperatures; and was limited to unskilled
> low stress occupations defined as having simple routine tasks, basic
> work-related decisions, and rare changes in workplace setting.

ALJ Soltes found however, that, as of June 1, 2016, plaintiff would require an

additional need to have more than two unscheduled absences per month as a result of

her migraines.

ALJ Soltes went on to step four and concluded that plaintiff could not perform her

past relevant work during any portion of the relevant period with the above RFC findings.

Proceeding to step five, the ALJ elicited testimony from a vocational expert, and, relying

on that testimony, concluded that plaintiff remained able to perform a significant number

of jobs in the national economy for the period prior to June 1, 2016, citing such

representative positions as sorter, addresser, and order clerk. The ALJ further found,

however, that there would be no work plaintiff could perform in the national economy with

the RFC finding applicable beginning on June 1, 2016.  Based upon these findings, ALJ

Soltes concluded that plaintiff was not disabled at any time prior to June 1, 2016, but

became disabled as of that date.

### c. This Action

Plaintiff commenced this action on October 30, 2020 and the matter was referred to Judge Peebles for a report recommendation.  As Judge Peebles indicates, in support of her challenge to the unfavorable portion of the ALJ's determination, plaintiff argued that the ALJ erred by (1) failing to properly weigh the opinion evidence from the various medical sources in the record, (2) failing to again adopt the limitation for off-task time and absences that he had adopted in his first decision on this application because such limitation was not challenged or overturned on appeal, and (3) failing to consider the side effects of plaintiff's medications. Dkt. No. 15.  Judge Peebles conducted oral argument by telephone on June 29, 2022, at which time he reserved decision pending further briefing.

Ultimately, Judge Peebles recommends that, after considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, a finding be made that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence and thus the Commissioner's decision be affirmed. *See* R & R, at 37-38.

As indicated, plaintiff files objections to Judge Peebles' conclusions and recommendations.

## IV.    DISCUSSION

Plaintiff presents the following grounds for objection:

1) The Magistrate Judge erred as a matter of law because the ALJ violated the remand order from the Appeals Council;

2) The Magistrate Judge erred as a matter of law by not properly applying the

treating physician rule. The ALJ failed to ask the treating physicians for more information supporting their findings and opinions;

3) The Magistrate Judge erred as a matter of law by not concluding that [plaintiff] would be off-task at least 10% of the time; and

4) The Magistrate Judge erred as a matter of law by not concluding that [plaintiff] was disabled by the side-effects of her medication.

*See* Obj., Dkt. No. 33, at p. 1.  The Court addresses these arguments in turn.

### a. Compliance with Remand Order

Plaintiff contends that the ALJ violated the instructions from the Appeals Council because he did not request that the treating and non–treating sources provide additional evidence and/or further clarification of their opinions. Obj. p. 11.  Plaintiff further contends that "[d]espite his failure, he still did not give appropriate weight to Drs. Gitlin and Pelton. He did not consider the records from Dr. Lu regarding the severity of [plaintiff's] headaches prior to June 1, 2016. He gave [plaintiff] a less restrictive RFC at the second hearing than at the first hearing. He did not correctly apply the treating physician rule to the findings and opinions of long-time treating psychiatrist Dr. Gitlin and primary care provider Dr. Pelton." *Id.*  Thus, plaintiff appears to contend that Judge Peebles erred by not finding that the ALJ erred in these regards.

However, the Court agrees with the Commissioner that plaintiff does not show that the ALJ violated the Appeals Council's order. The order did not require the ALJ to "request the treating and non-treating sources provide additional evidence and/or further clarification of the opinions," Obj., at 11, rather, the order stated that "[a]s appropriate, the Administrative Law Judge *may* request" such information. Tr. 900 (emphasis added). Further, the order did not require the ALJ to give any particular weight to the opinions of

Drs. Gitlin and Pelton, nor did it require the ALJ to give any particular residual functional

capacity ("RFC") finding.

Moreover, the Court agrees with Judge Peebles's analysis where he essentially

rejected similar arguments. In this regard, Judge Peebles wrote:

> Related to the opinion evidence, plaintiff further argued at oral argument
> both that (1) the ALJ had a duty to recontact Dr. Lu, Dr. Gitlin, Dr. Pelton,
> and Dr. Sprouse-Blum as a consequence of both the Appeals Council's
> remand order and based on the fact that he failed to afford their opinions
> controlling weight, and (2) the opinions from various treating sources that
> plaintiff is "unable to work" or unable to perform her work as a nurse are not
> merely statements on issues reserved to the Commissioner. I recommend a
> finding that neither of these arguments is persuasive. As to the first
> argument, the Appeals Council's order did not mandate any specific
> development of the record in this respect, and the case law cited by plaintiff
> in her supplemental brief, to the extent it is consistent with the current
> regulations related to recontacting a medical source, is distinguishable. The
> ALJ did not discount those opinions because they were incomplete; rather,
> he found that they did not provide a function-by-function assessment and to
> a large extent represented issues reserved to the Commissioner.
> Additionally, to the extent he discounted the opinions in part because they
> did not offer a function-by-function analysis, he also clearly provided other
> reasons for rejecting the opinions they did offer, including inconsistencies
> with their own treatment records and with the other objective medical
> evidence in the record. AT 783-84 (finding Dr. Gitlin's opinion represented
> matter reserved to the Commissioner and was inconsistent with the findings
> of Dr. Zandi); 784 (finding Dr. Pelton's opinion was in part an opinion
> reserved to the Commissioner and in part inconsistent with mental status
> and clinical findings, reported daily activities, and Dr. Zandi's testing results);
> 784 (finding Dr. Sprouse-Blum's opinion that plaintiff was "unable to work"
> represented a matter reserved to the Commissioner). The Commissioner is
> correct that the ALJ was not required to recontact all of these sources to
> have them provide a function-by-function assessment given that the record
> contained sufficient evidence from which the ALJ could come to a reasoned
> conclusion regarding disability. In other words, the fact that the treating
> sources chose to provide opinions not including more detailed
> function-by-function assessments did not create a gap in the record that the
> ALJ was required to fill, particularly as the ALJ had treatment records from
> each of those physicians through which he could reliably assess both the
> RFC and whether the opinions that were provided were or were not
> supported by their treatment history of the plaintiff. 20 C.F.R. § 404.1520b(b)
> (stating that the ALJ may choose to recontact a medical source if he or she

finds that the information is insufficient to determine whether the claimant is disabled or there is an inconsistency that prevents the ALJ from reaching a conclusion about disability); *see Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018) (noting that, even under the prior regulations, the "duty to recontact" arose "only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings," and found no duty to recontact even where plaintiff alleged the record did not contain every progress note from a treating source). Lastly, as to plaintiff's second argument, opinions that a claimant is "unable to work" are functionally no different from opinions that a claimant is disabled, and both represent issues reserved to the Commissioner that are entitled to no special deference. *See Ryan G. v. Comm'r of Soc. Sec*., 21-CV-0474, 2022 WL 1597615, at *9-10 (N.D.N.Y. May 19, 2022) (D'Agostino, J.) (finding that an opinion that plaintiff was unable to work and was permanently disabled was properly considered an opinion on an issue reserved to the Commissioner that did not need to be evaluated or weighed); *Monter v. Comm'r of Soc. Sec.*, 18-CV-1457, 2020 WL 1703211, at *5 (W.D.N.Y. Apr. 8, 2020) ("As an initial matter, the opinion a plaintiff is "disabled" or "unable to work" is not controlling on an ALJ.").

R & R, at 27-28, n. 5.

Additionally, plaintiff argues that the ALJ erred by "not consider[ing] the records from Dr. Lu regarding the severity of [plaintiff's] headaches prior to June 1, 2016." Obj. at 11.  The Commissioner contends that this is the first time plaintiff has raised this particular argument and therefore asserts that the argument is waived "both because plaintiff did not make it in her opening brief (Doc. 15), *Timothy B.*, 2018 WL 3853999, at *1 (citing cases), and because the argument is not minimally developed, *e.g., United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation omitted)."  Def. Opp. at 3-4.  The Commissioner further argues that, in any event, the argument is without merit because plaintiff "offers no challenge to Judge Peebles's well-reasoned analysis concluding that Dr. Lu offered no 'medical opinion.'" *Id.* at 4  (citing R&R at 14-15).  The Court agrees with the Commissioner on the second issue.

In this regard, Judge Peebles concluded:

Plaintiff points first to a treatment record dated May 20, 2015, in which Dr. Yaohua Lu records plaintiff's reports regarding the nature of her headaches and generally notes that "[t]he patient's chronic pain has negatively impacted level of function, resulting in a lower general activity level, a depressed mood, more difficulty performing normal work, less enjoyment of life, poor sleep and difficulty performing the basic activities of daily living." Administrative Transcript ("AT") at 551. The ALJ was [under] no obligation to weigh these statements according to the above regulations because they do not constitute a medical opinion. Pursuant to those regulations, medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s). . . ." 20 C.F.R. §§ 404.1527(a)(1) and 416.927(a)(1). Rather than representing a statement that reflects Dr. Lu's judgment about the nature and severity of plaintiff's impairments, this notation is merely a vague statement that plaintiff's pain impacts her daily functioning, without any specification of the extent or severity of that limitation, which specific functions are implicated, or even any indication that this statement represents Dr. Lu's professional judgment as opposed to merely reports by the plaintiff. Moreover, although plaintiff cites to Dr. Lu's notation that plaintiff's headaches "often" start frontally as evidence that plaintiff was experiencing frequent headaches prior to June 2016, plaintiff's reading of that statement is not supported. The statement does not represent a report that plaintiff was often experiencing headaches, but rather merely an indication that, when she did experience headaches, they often would present in the noted area. As such, the ALJ was under no obligation to afford any [special] deference to Dr. Lu's statements, nor do those statements provide evidence that her headaches were as severe during the relevant period as they were documented to be beginning in June 2016.

I also note that, as a general matter, plaintiff argues that the ALJ should have found that her migraines were disabling for the entire period at issue, not merely after June 1, 2016. However, the ALJ's assessment of this issue is supported by substantial evidence. Although there are a few reports or notations regarding headaches in the record prior to June 2016, the ALJ is correct that plaintiff did not appear to seek treatment for migraines during that time, and there is no evidence to support that she was experiencing migraines or headaches at the same intensity or with the same frequency as she did beginning in June 2016. Of note, the treatment report from neurologist Dr. Edward G. Boyer from September 2016 specifically states that plaintiff reported having headaches "that occur 20 days a month *since June*" and notes in a later portion of the same report that plaintiff's chronic headaches had worsened since June 2016. AT 746 (emphasis added). The evidence therefore supports the ALJ's finding that, beginning June 1, 2016,

13

plaintiff would require two absences per month due to her migraines, but there is no indication that the ALJ's finding that her migraines did not impose such a restriction sooner should be considered error.

R & R, at 14-16.

Upon de novo review, the Court reaches the same conclusion on this issue as did Judge Peebles. Moreover, the Court agrees with the Commissioner that plaintiff has not pointed to any error by the ALJ or Judge Peebles in assessing the severity of plaintiff's headaches prior to June 1, 2016.  As the Commissioner argues, the evidence relating to Dr. Lu that plaintiff advances is simply Dr. Lu's recitation of the "History of Present Illness/Pain Complaint" that plaintiff provided to Dr. Lu, stating: "Her headache is often starting frontally, radiating towards occipital region; the pain is similar to her tension headaches. Sometimes she also has pain radiating from occipital region towards top of her head." Tr. 550-51; Pl's Obj. at 18.  The ALJ was not required to specifically mention this examination note to demonstrate that it was considered. S*ee Brault,* 683 F.3d at 448. 2012).  Moreover, the ALJ was expressly aware that there were notations of headaches before June 2016, but indicated that "treatment records prior to June 2016 make some reference to reports of headaches but do not reflect any specialized or significant treatment, nor do they identify frequency, intensity, or duration of headaches, by report or otherwise, until treatment was established through the University of Vermont Medical Center in September 2016." Tr. 773.  Plaintiff fails to show any error by the ALJ or Judge Peebles relative to assessing the severity of plaintiff's headaches prior to June 1, 2016.

For these reasons, plaintiff's objections in these regards are overruled.

**b.  Treating Physician Rule**

Under her second ground for objection, plaintiff argues that the "Magistrate Judge erred by not giving proper weight to the opinions of the treating physicians, treating psychiatrist, treating neuropsychologist regarding [plaintiff's] limitations between November 30, 2014 and June 1, 2016.  The ALJ erred by not giving sufficient weigh[t to] the medical source statement of his own consulting examiner, Dr. Wassef. The ALJ failed to follow the remand order that he re-contact the treating sources if he did not credit their opinions. The Magistrate Judge erred by not considering that the ALJ failed to get a medical expert on the issue of when her headaches became disabling."  Obj., at 11.

To the extent that this argument is directed at Dr. Lu's report, the Court agrees with the Commissioner that the ALJ was expressly aware that there were notations of headaches before June 2016, but emphasized that, until September 2016, there was "no specialized or significant treatment," and no indication of "intensity, or duration of headaches, by report or otherwise." Tr. 773.  The Court also agrees with the Commissioner that plaintiff's arguments are insufficient to "upset this analysis, and [that] the Court should reject plaintiff's request to re-weigh the evidence." Def. Resp., at 34 (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("It is the function of the [Commissioner], not ourselves, to resolve evidentiary conflicts....") (citing cases); *Walsh ex rel. S.J.W. v. Comm'r of Soc. Sec.*, No. 1:16-cv-1413 (GTS/WBC), 2018 WL 1229827, at *5 (N.D.N.Y. Mar. 9, 2018) ("It is not the function of this Court to re-weigh evidence....") (citing cases)).  Plaintiff's objection on this basis is overruled.

The same analysis applies to plaintiff's contention that the May 2016 opinion of treating psychiatrist Dr. Gitlin, which concludes that plaintiff could not "work as a nurse or

15

in even a less demanding environment," Tr. 622, "is well-supported" and therefore should be accepted. Obj., at 18-19.  Again, the Court declines to re-weigh the evidence. Furthermore, the Court agrees with Judge Peebles's analysis accepting the ALJ's determination to discount Dr. Gitlin's opinion.  *See* R & R at 17-18.  Therefore, plaintiff's objection on this basis is overruled.

Next, the Commissioner argues that the plaintiff repeats the arguments from her initial brief regarding the opinions of treating physician Dr. Pelton, and that plaintiff does not engage with the ALJ's analysis discounting those opinions (Tr. 784), or with Judge Peebles's analysis upholding the ALJ's  discounting (R&R at 19-23).  Upon de novo review, the Court agrees with Judge Peebles's analysis upholding that discounting (R&R at 19-23), and therefore plaintiff's objection on this basis is overruled.

Plaintiff next turns to Dr. Zandi, whom she calls "the treating neuropsychologist." Pl's Brief at 19.  Plaintiff complains that the ALJ only gave little weight to Dr.  Zandi's March 2016 opinion that plaintiff "could only remain functional if her environment is controlled." *Id.* (citing Tr. 783).  But, as the Commissioner points out, Dr. Zandi was not a "treating source" because the doctor provided only "two consultative neuropsychological evaluations" (Tr. 779), in May 2016 and December 2017 (Tr. 779-80, referring to Tr. 623-33, 1109-19), thus indicating a lack of a ongoing treatment relationship. Def. Resp. at 8.  Further, upon de novo review the Court agrees with Judge Peebles's analysis of the ALJ's treatment of Dr. Zandi's reports where he concluded:

> Of note, plaintiff's functioning was significantly better in 2017 than 2016 in every subarea other than visual working memory. Although even the 2017 testing results document deficits with plaintiff's memory, the ALJ's reliance on the 2017 test results as being more reliable and accurate, along with his discussion of all of the other relevant evidence throughout the decision,

16

provide sufficient information to show that his choice to afford little weight to
Dr. Zandi's 2016 statement that plaintiff can only function in a controlled
environment is supported by substantial evidence.

R & R, at 25-26.  Plaintiff's argument to reweigh this evidence is an insufficient basis to

challenge Judge Peebles's conclusion.  Accordingly, plaintiff's objection in this regard is

overruled.

Next, plaintiff challenges the weight the ALJ afforded the opinion of H. Ferrin, the

Commissioner's non-examining consultant, contending that "[t]he record does not contain

any credentials for H. Ferrin (38) (R: 126, 130, 132). We do not know if he is a medical

doctor, a Ph.D., or some other type of consultant. The ALJ [erred] by overriding the

opinion of the treating board-certified psychiatrist with that of a non-examining consultant."

Obj., at 20.  Plaintiff presented the same arguments to Judge Peebles who, upon analysis,

rejected them. *See* Rep. Rec. at 28-30.  Upon de novo review, the Court agrees with

Judge Peebles's analysis and conclusions, and therefore plaintiff's objections in these

regards are overruled.

Plaintiff also argues that the ALJ "egregiously erred" by not including in the RFC the

limitations set forth in the opinion of consultative examining physician Dr. Wassef.  Pl.

Obj., at 20-21. The Commissioner responds that "the ALJ properly gave limited weight to

[this opinion], explaining why he discounted the opinion to the extent it found 'marked'

limitations." Def. Resp., at 9 (citing Tr. 782, referring to Tr. 595-96).  The Commissioner

correctly argues that "'the opinions of consulting sources, unlike those of treating sources,

are entitled to no special deference.'" *Id.* (quoting *Lamorey v. Barnhart*, 158 F. App'x 361,

363 (2d Cir. 2006)).  Furthermore, the Commissioner argues that "plaintiff does not

engage with the reasoning that the ALJ gave in weighing this opinion, nor does plaintiff

engage with Judge Peebles's analysis rejecting her perfunctory challenge to the ALJ's weighing of this opinion." *Id.* (citing R&R at 26-28). Upon de novo review, the Court finds that Judge Peebles appropriately analyzed the ALJ's treatment of Dr. Wassef's opinion. *See* R&R at 26-28. Accordingly, plaintiff's objection in this regard is overruled.

Plaintiff again argues that the ALJ was required to re-contact various medical sources. However, the Commissioner argues, "plaintiff never engages with Judge Peebles's sound analysis finding no requirement to recontact medical sources in this case (R&R at 27-28 n.5), and plaintiff's largely verbatim reiteration of her earlier argument is not entitled to de novo review." Def. Resp., at 10 (citing *Timothy B.*, 2018 WL 3853999, at *1). The Court agrees with the Commissioner's arguments that under prevailing regulations and case law, the ALJ was not required under the circumstances in this case to obtain further evidence or to further develop the record. *See* Def. Resp., at pp. 10-13. Moreover, as indicated above, the Court agrees with Judge Peebles's analysis concluding that the ALJ was not required to recontact any medical sources in this case. *See* R&R at 27-28 n.5. Accordingly, Plaintiff's objection in this regard is overruled.

### c. Effect of the ALJ's Previous Off-Task and Absence Finding

Plaintiff argues that "[t]he Magistrate Judge [erred] by not finding that, based upon the ALJ's residual functional capacity determination in the original appeal, that she would be off-task 10 percent of the time and have one unscheduled absence a month, [plaintiff] is unable to perform any work." Obj., at 22. Plaintiff presented the same argument to Judge Peebles, who found that it was not persuasive for multiple reasons. *See* R & R at 31-33. Upon de novo review, the Court agrees with Judge Peebles's conclusions, namely,

18

that the ALJ was not obligated to adopt any portion of his previous decision because "the Appeals Council vacated the previous decision and remanded with instructions to reconsider a number of aspects of that previous decision, including the RFC finding,"*id.* at 32 (citing AT 899-900); that on remand "the ALJ considered other evidence relevant to the applicable period between November 30, 2014, and December 4, 2017, and reassessed the weight to which each medical source opinion is entitled in light of the remand order and all the evidence, notably making different findings as to many of those opinions in the more recent decision," *id.* (*comparing* AT 37 *with* AT 782-84); and "even if the ALJ had included [the previous off-task and absence] finding in the current RFC, that limitation would not necessitate a finding of disability" because "at the most recent hearing, the vocational expert testified, in response to hypothetical questions from the ALJ, both that 'the threshold tolerance level is up to ten percent of the workday, but no more than that,' and the amount of tolerable absences is 'one per month, but nothing more than that.'" *Id.* at 32-33 (quoting AT 836); *see id.* at 33 ("[E]ven if it was an error for the ALJ to fail to include [the previous] finding in the most recent decision, such error would nonetheless be harmless.")(citing *Andrew B. v. Comm'r of Soc. Sec.*, 20-CV- 1591, 2022 WL 1423257, at *4 (W.D.N.Y. May 5, 2022) (noting that "failure to address a specific limitation may be harmless if discussion of the limitation would not have changed the outcome of the case"); *Ryan W. v. Comm'r of Soc. Sec.*, 20-CV-1325, 2022 WL 813934, at *4 (N.D.N.Y. Mar. 17, 2022) (Stewart, M.J.) (finding error harmless where "the ultimate finding that he was not disabled would [not] have been altered" by the alleged error).  As indicated, the Court agrees with Judge Peebles's conclusions.

Plaintiff's reliance on *Cosnyka v. Colvin*, 576 Fed. Appx. 43, 45 (2d Cir. 2014) for the proposition that the "Second Circuit held that there was no evidence that a person who was off task 10 percent of the time could work" is misplaced. *See* Obj. at 23. In *Cosnyka*, "[t]he ALJ found that Cosnyka retained an RFC to 'perform sedentary work as defined in 20 C.F.R. § 416.967(a) ... [and that] the claimant would be off task approximately 10% of the workday, which the undersigned defines as 6 minutes out of each hour.'" *Id.* (citing App.75). "Relying upon the testimony of the vocational expert that being off-task six minutes out of every hour would not prevent Cosnyka from holding a job, the ALJ concluded that Cosnyka was not disabled under the SSA." *Id.* Nevertheless, in agreeing with the plaintiff's argument that the ALJ's RFC finding and consequent interpretation of the vocational expert's testimony was unsupported, the Second Circuit wrote: "The ALJ determined that Cosnyka would be off-task for ten percent of the workday, based in part on the medical evidence detailed above. The determination that this 'off-task' time translated to six minutes out of every hour, however, was not based on the record but was the result of the ALJ's own surmise." *Id.* at 46. Here, by contrast, plaintiff does not argue that the ALJ's previous off-task finding was unsupported by the evidence, but rather contends that the finding should have been adopted. Neither *Cosnyka* nor any of the other cases plaintiff cites for the proposition that courts in the Second Circuit have found that individuals are unable to successfully perform work when they are off task over 10% of the time or have unscheduled absences of more than one day a month, *see* obj., at 23-24, change the results here as the vocational expert testified that employer tolerance was up to these levels. Thus, whether under plain error review or de novo review, plaintiff's

objection in this regard is overruled.

### d. Disabled by the side-effects of medication

Plaintiff argues that Judge Peebles "erred by not finding that the ALJ did not consider the side effects of [plaintiff's] prescription medications." Obj., at 24. Plaintiff contends:

> In the instant case, the records indicate that [plaintiff] was taking numerous strong prescription medications, including Wellbutrin for depression; Prozac for depression; Lamictal as a mood stabilizer and bipolar; Lyrica for neuropathic pain; Adderall for ADD and chronic fatigue; MSContin for pain; Vraylar for bipolar; Robaxin for pain; and Imitrex for migraines. Several doctors believed that the side effects of these medications were causing side effects that limited her ability to function. The ALJ erred in not considering the well-documents side effects of this medications in determining her RFC prior to June 1, 2016.

Obj., at 25.

Plaintiff presented essentially the same argument to Judge Peebles, *see* Def. Resp., at 16 ("plaintiff simply repeats her earlier argument")(citing Doc. 15 at 33-34), which Judge Peebles analyzed and rejected. *See* R & R, at 33-37. Judge Peebles ultimately concluded that "[b]ecause the ALJ assessed the impact of plaintiff's documented medication side effects, as well as the improvement of those side effects when she was no longer overusing unnecessary medications, I recommend a finding that the ALJ did not fail to appropriately assess the side effects of plaintiff's medications." *Id.* at 37. Upon clear error review, the Court finds none with regard to this issue. Further, upon de novo review the Court reaches the same conclusion as did Judge Peebles for the reasons discussed in the Report and Recommendation at pages 34 to 37. Accordingly, plaintiff's objection in this regard is overruled.

## V.    CONCLUSION

In conclusion, after reviewing the record in this matter as a whole and the

objections stated by plaintiff to Judge Peebles's recommendations, the Court **ACCEPTS**

and **ADOPTS** Judge Peebles's recommendations for the reasons stated in his Report and

Recommendation,  Dkt. No. 32, and for the reasons discussed above.  Accordingly, the

Commissioner's decision is **AFFIRMED**, defendant's motion for judgment on the pleadings

(Dkt. No. 20) is **GRANTED**, plaintiff's motion for judgment on the pleadings (Dkt. No. 15)

is **DENIED**, and plaintiff's complaint is **DISMISSED**.

The Clerk of the Court may close the file in this matter.

**IT IS SO ORDERED.**

Dated: September 30, 2022

Thomas J. McAvoy
Senior, U.S. District Judge

22